**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Doug Brown,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>Defendant. | No. CV-07-922-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Motion for Summary Judgment of Plaintiff Doug Brown (Dkt. # 16) and the Cross-Motion for Summary Judgment of Defendant Michael J. Astrue, Commissioner of Social Security (Dkt. # 20). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.

**BACKGROUND**

On June 1, 2004, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income. (R. at 20.) He alleged a disability date of May 25, 2004. (*Id.*) Plaintiff was adjudicated disabled as of April 5, 2005, but his claim for benefits between May 25, 2004, and April 5, 2005, was denied both initially and upon reconsideration. (R. at 46; *see* R. at 20.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").

(*See* R. at 56.) The ALJ agreed that Plaintiff was not disabled before April 5, 2005. (R. at 27-28.)

In determining whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 (2003).[1] At step one, the ALJ determined that Plaintiff had not performed substantial gainful activity since the alleged date of disability. (R. at 27.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of hypertension, cardiomyopathy, congestive heart failure, obesity, back pain, and a history of degenerative arthritis of the knees. (*Id.*) At step three, the ALJ determined that none of these impairments, either individually or collectively, met or equaled any of the specific impairments described in the regulations. (*Id.*)

At step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[2] to perform a range of sedentary work:

---

[1]Under that test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2]RFC is the most a claimant can do despite the limitations caused by his impairments. SSR 96-8p (July 2, 1996).

> Specifically, the claimant can lift/carry less than 10 pounds occasionally and frequently. He can stand and/or walk between 2-4 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. He does not require any assistive devices. He is limited to occasional climbing, crouching and crawling. He is limited to frequent balancing, stooping and kneeling.

(*Id.*) The ALJ noted that Plaintiff's past relevant work as a branch manager and wholesale accounts executive did not require capabilities inconsistent with that RFC, and thereupon reasoned that Plaintiff was able to perform his past relevant work. (*Id.*) On that basis, the ALJ determined that Plaintiff was not disabled between May 25, 2004, and April 5, 2005. (R. at 28.)

The Appeals Council declined to review the ALJ's decision. (R. at 11.) Plaintiff filed the instant complaint on May 4, 2007.[3] (Dkt. # 1.) Plaintiff filed his Motion for Summary Judgment on February 6, 2008. (Dkt. # 16.) Defendant filed his Cross-Motion for Summary Judgement on February 27, 2008. (Dkt. # 20.)

## DISCUSSION

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

---

[3]Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. Analysis

Plaintiff asserts that the ALJ erred in: (A) rejecting the testimony of the treating physician, Dr. Chatham (Dkt. # 18 at 4-6), (B) rejecting Plaintiff's subjective complaint testimony (*Id.* at 7-10), and (C) concluding that Plaintiff was capable of performing his past relevant work (*Id.* at 13-15). The Court will address each argument in turn.[4]

### A. The ALJ's evaluation of the treating physician's testimony does not present reversible error.

Plaintiff argues that the ALJ erred by rejecting the opinion of the treating physician, Dr. Chatham. (Dkt. # 18 at 4-6.) "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). "The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Id.* at 762 (internal quotation omitted).

Plaintiff argues that the ALJ improperly rejected Dr. Chatham's testimony that Plaintiff had an ejection fraction of 30% (*see* R. at 166), as well as Dr. Chatham's answer of

---

[4]Plaintiff also argues that if the Court determines that the case should be remanded, it should be remanded with an order to award benefits. (Dkt. # 18 at 10-13.) Because the Court concludes, based on the reasons explained below, that remand is not called for, the Court does not address this argument.

"No" to the question: "If the patient needs to alternate standing and sitting, do breaks and [a] lunch period provide sufficient relief?" (*see* R. at 167). The facts surrounding each of these points are discussed below.

With respect to the ejection fraction, the ALJ concluded that the 30% statement made on Dr. Chatham's RFC questionnaire was not supported in the record. (*See* R. at 25.) As the ALJ stated, the evaluation of Banner Baywood Heart Hospital - made in the course of an actual medical exam, not an RFC questionnaire - was that Plaintiff had an ejection fraction of "35-40%." (R. at 283; *see also* R. at 173.) The ALJ noted, and Plaintiff did not dispute, that there was no evidence to support an ejection fraction of 30% and nothing to controvert the Hospital's diagnosis of 35-40%.[5] (*See* R. at 285-86.)

With respect to Dr. Chatham's response to the sit/stand question on the RFC form, the ALJ found Dr. Chatham's opinion "regarding the [sit/stand] option to be incomplete because the doctor did not indicate the length or the frequency of the sit/stand breaks required." (R. at 25.) On the form Dr. Chatham filled out, the question "If the patient needs to alternate standing and sitting, do breaks and [a] lunch period provide sufficient relief?" was followed by three choices: "Yes," "No," and "N/A." (R. at 167.) The form further provided "If no: How often and for how long?" (*Id.*) Although Dr. Chatham selected "No," he did not answer the "How often and for how long?" question. (*See id.*) Thus, the ALJ was unable to determine whether Dr. Chatham did, in fact, mean to answer "No" (and simply forgot to answer the follow-up question) or if Dr. Chatham meant to state that Plaintiff did not need

---

[5]Plaintiff elsewhere suggests that the difference between 30% and 35-40% is inconsequential and therefore not sufficient to justify the ALJ's decision to reject Dr. Chatham's statement. (*See* Dkt. # 18 at 5-6.) As the ALJ noted, however (*see* R. at 283), the disability listings require an ejection fraction of 30% or less for the claimant to be found disabled, *Disability Evaluation Under Social Security*, Listing 4.02(A)(1), *available at* http://www.ssa.gov/disability/professionals/bluebook/4.00-cardiovascular-adult.htm (last visited Aug. 22, 2008). Thus, the difference between 30% and 35-40% is not only consequential, it can be dispositive. The ALJ did not err in attributing significance to this distinction.

to alternate sitting and standing (and intentionally did not answer the follow-up), in which case he should have selected "N/A." (*See* R. at 295.)

Even assuming that the ALJ did err on either or both of these points, the error would be harmless. Where an ALJ's error does not affect his ultimate conclusion, the error is harmless. *See Batson*, 359 F.3d at 1197 (holding that an ALJ's erroneous assumption that a claimant sat while watching television, as opposed to moving about, did not affect the ALJ's ultimate conclusion and therefore, even if it constituted error, was harmless).

In this case, Dr. Chatham's opinion, informed by both of the above points, was *not* that Plaintiff was disabled and unable to perform any work activities. Rather, Dr. Chatham concluded that Plaintiff could lift up to ten pounds occasionally and frequently, could stand or walk for at least two hours in an eight-hour workday, and could sit for six hours of an eight-hour workday. (R. at 166-67.) These were the very same findings made by the ALJ. (R. at 27.) Both support the same conclusion - that Plaintiff was restricted to performing sedentary work. *See Dictionary of Occupational Titles*, Appendix C, *available at* http://www.oalj.dol.gov/public/dot/references/dotappc.htm (last visited Aug. 22, 2008) [hereinafter "DOT Appendix C"] (defining sedentary work as requiring the exertion of up to ten pounds, sitting most of the day, and standing or walking occasionally). That is precisely the conclusion reached by the ALJ in determining Plaintiff's RFC. (R. at 27.) While the ALJ may have disregarded certain findings Dr. Chatham made in support of his opinion, the ALJ agreed with and accepted the opinion itself. Thus, any error in rejecting those findings did not affected the ALJ's ultimate conclusion. Because any error did not affect the ALJ's ultimate conclusion, such error would be harmless.[6]

---

[6]Any error stemming from the ALJ's treatment of the sit/stand question would be harmless for another reason as well. The ALJ found, based on the unchallenged testimony of the vocational expert, that Plaintiff would be able to perform his past relevant work as a branch manager or wholesale accounts executive with *or without* a sit/stand option (under the reasoning that highly skilled positions permit workers control over their work environment). (*See* R. at 26; *see also* R. at 298-99.) Thus, even if Dr. Chatham intended to assert that Plaintiff required a sit/stand option, and even if the ALJ would otherwise have

**B. Substantial evidence supports the ALJ's decision to reject portions of Plaintiff's subjective complaint testimony.**

Plaintiff argues that there is not substantial evidence to support the ALJ's rejection of certain aspects of Plaintiff's subjective complaint testimony. (Dkt. # 18 at 7-10.) The ALJ concluded that Plaintiff's "allegations of having fatigue and shortness of breath of such severity as to preclude him from being able to sustain work activity . . . are not supported in the medical record as a whole." (R. at 24.) Plaintiff disputes: (1) the ALJ's evaluation of the medical evidence regarding Plaintiff's fatigue and shortness of breath, and (2) evidence of Plaintiff's daily activities from a function report he completed.[7] Each is discussed in turn.

**1. Medical evidence about plaintiff's fatigue and shortness of breath**

With respect to fatigue and shortness of breath, Plaintiff went to urgent care on May 27, 2004, complaining of these symptoms. (R. at 24; *see also* R. at 139-41.) A chest x-ray revealed cardiomegaly with mild pulmonary venous engorgement. (R. at 142.) Plaintiff then drove himself to the hospital, where he was given intravenous diuretics. (R. at 174.) These relieved his symptoms and Plaintiff was discharged. (*See* R. at 174-75.) The next day, Plaintiff had a cardiology consultation with Dr. Chatham. (R. at 251.) Plaintiff revealed at that consultation that he had not been taking his medications for the previous ninety days. (*Id.*) Dr. Chatham's plan was that Plaintiff continue the diuretics and restart his medications. (*Id.*) After Plaintiff resumed taking his medications, progress notes from follow-up consultations (in December 2004 and March 2005) indicated no abnormal clinical findings. (R. at 24; *see also* R. at 160-64.) The ALJ pointed out that Plaintiff's "infrequent and routine follow-ups during the time period in question [after resuming medication] are not fully

---

accepted that statement, the ALJ's conclusion that Plaintiff could perform his past relevant work would remain unchanged.

[7]The ALJ also concluded that Plaintiff's "history of having back pain and degenerative joint disease of the knees" was not disabling. (R. at 24.) Plaintiff does not dispute that finding. (*See* Dkt. # 18 at 7-10.)

consistent with the claimant's complaints of disabling fatigue and shortness of breath." (R. at 24.)

Plaintiff makes five challenges to the ALJ's findings on this point. The first two challenges simply mischaracterize the ALJ's findings. Plaintiff first argues that the ALJ did not "identify the symptom complained of which she finds to be inconsistent with severe cardiomyopathy, pitting edema, hypertension, weight gain[,] and/or exogenous obesity."(Dkt. # 18 at 7.) However, the ALJ did identify Plaintiff's subjective complaints, describing them as "fatigue," "shortness of breath," and "pain" (R. at 24) - the very same terms used by Plaintiff (*See* Dkt. # 18 at 7-10). Moreover, the ALJ did not find that Plaintiff's subjective complaint symptoms were "inconsistent" with Plaintiff's medical problems; to the contrary, the ALJ agreed that those symptoms were present. (*See* R. at 24-25.) Rather, the ALJ found that the symptoms, though present, were not disabling. (*See id.*) Because the predicates of Plaintiff's argument are factually incorrect, the Court finds no error in this regard.

Second, Plaintiff argues that the ALJ "fault[ed]" him for being off his medications for three months, suggesting that this constitutes legal error. (Dkt. # 18 at 8.) However, the ALJ never used such language or made such an intimation. The ALJ merely noted that Plaintiff's hospitalization, involving complaints of fatigue and shortness of breath, followed a three-month hiatus from medication - and that once Plaintiff resumed taking his medications he experienced no similar episodes. (R. at 24.) In concert with Plaintiff's "infrequent and routine follow-ups," the ALJ concluded that when Plaintiff took his medication his subjective complaint symptoms did not resurface in a disabling manner. (*See id.*) Plaintiff does not contest the internal logic of that conclusion. (*See* Dkt. # 18 at 8.) Because the ALJ never interpreted Plaintiff's failure to take his medications as anything other than evidence that he was not disabled when he did take them, the ALJ committed no legal error in this regard.

Plaintiff's third, fourth, and fifth arguments each contend that the ALJ should not have relied on certain evidence. Plaintiff argues that the ALJ should not have considered that he was discharged from the hospital in stable condition because "[i]t is ludicrous to conclude that everyone discharged from a hospital possesses [an RFC] consistent with an ability to

work." (*Id.*) Plaintiff then asserts that his "poor judgment in refusing an ambulance [and driving to the hospital himself] is not a basis for denying benefits." (*Id.*) Plaintiff finally contends, referencing the absence of abnormal clinical findings, that "[c]ourts do not require that a medical condition be mentioned in every report in order to conclude that limitations are supported by the record" (*id.* at 9), and thus suggests that the ALJ erred in relying on that evidence.

It is well-established, however, that an ALJ is required to consider "all of the available evidence" in evaluating subjective complaint testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). This is the case because "pain is subjective and not susceptible to measurement by reliable techniques." *Id.* Plaintiff identifies no authority stating that it is error to rely on any one of the pieces of evidence cited by the ALJ. (*See* Dkt. # 18 at 7-10.) The Court therefore finds no error.

To the extent that Plaintiff is arguing that the ALJ improperly gave each of these factors dispositive weight, there is no indication of that in the ALJ's disposition. With respect to being discharged in stable condition, the ALJ did nothing more than merely note that Plaintiff was so discharged. (*See* R. at 24.) To the extent that the ALJ attributed significance to this fact, nothing suggests that the ALJ considered it dispositive. With respect to Plaintiff's decision to drive himself to the hospital, the ALJ stated that even when Plaintiff was off of his medication, during his worst episode of fatigue and shortness of breath, he was able to drive a vehicle. (*See id.*) The ALJ did not state that such a capability inherently negated Plaintiff's subjective complaints. With respect to the ALJ's reliance on an absence of abnormal clinical findings in the progress notes, again, the ALJ never suggested that such an absence ended its inquiry. Rather, the ALJ merely included the reports as part of its analysis. (*See id.*) The ALJ did not err in doing so. *See Bunnell*, 947 F.2d at 346.

**2. Function report regarding plaintiff's daily activities**

In addition to these specific occasions, the ALJ also highlighted further evidence relating to Plaintiff's activity level that tended to show that Plaintiff's pain, fatigue, and shortness of breath were not inherently disabling. The ALJ cited to a function report made on July 27, 2004. (R. at 85-92.) In that report, Plaintiff stated that he was able to prepare his own meals, read, watch television, and "walk for exercise." (R. at 85.) He also stated that he cares for his friend's son, preparing three meals a day for him and monitoring his play time. (R. at 86.) The ALJ concluded that "[t]his is persuasive evidence that the claimant was at least capable of performing a range of sedentary work." (R. at 25.) Plaintiff further stated that he was able to clean his house, weed, do laundry, perform household repairs, and sweep and mop floors. (R. at 87.) Plaintiff further stated that when going out he would travel either by walking, driving, or riding a bicycle. (R. at 88.) Considering all of this evidence in conjunction with the medical evidence described above, the ALJ concluded that "[d]ue to his conditions, it is likely that the claimant would have fatigue. But there is no indication in the medical record of any permanent work preclusions." (R. at 25.)

Plaintiff argues that these household activities do not evidence "an ability to perform physical functions that are easily transferable to the grueling environment of a work place." (Dkt. # 18 at 10.) There is direct authority to the contrary, however, for the ability to perform household chores may constitute substantial evidence that the claimant is not disabled by subjective complaints of pain and fatigue. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's credibility analysis where the ALJ "pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, [and] laundry"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (affirming the ALJ's credibility analysis where the ALJ "determined that Morgan's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work"); *Orteza v. Shalala*, 50 F.3d

748, 750 (9th Cir. 1995) ("An ALJ is clearly allowed to consider the ability to perform household chores[.]").

Plaintiff also argues that this evidence was outweighed by other evidence in the function report, such as Plaintiff's statement that he experiences difficulty in attending to personal needs, that activities take longer to complete, and that his impairments affect his ability to complete tasks and maintain concentration. (Dkt. # 18 at 9-10.) However, weighing the evidence and resolving conflicts or ambiguities therein is the province of the ALJ. *See Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. The Court will not reweigh the evidence.

The ALJ weighed the evidence and found that Plaintiff's subjective complaints of fatigue, shortness of breath, and pain were not sufficient to preclude all work. This finding is supported by substantial evidence. Therefore, the ALJ did not err in this regard.

**C. Substantial evidence support's the ALJ's determination that Plaintiff could perform his relevant past work.**

Plaintiff challenges the ALJ's conclusion that his past work as a branch manager and wholesale accounts executive was consonant with an RFC to lift or carry less than 10 pounds occasionally and frequently, stand or walk between 2-4 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Dkt. # 18 at 13-15.) Plaintiff identifies a work history report in which he described his past branch manager position as requiring the ability to stand or walk for 4-6 hours and the ability to lift up to 100 pounds, and his past wholesale account executive position as requiring the ability to stand or walk for 6-7 hours per day and lift up to 50 pounds. (*Id.* at 13-14; *see also* R. at 95-106.)

However, the vocational expert testified that Plaintiff's work was analogous to work defined in the Dictionary of Occupational Titles ("DOT") as "mortgage and loan officer positions." (R. at 290.) The DOT defines that position, and thus Plaintiff's past work, as sedentary. *See* DOT 186.267-018 (mortgage-loan officer). Sedentary positions require lifting up to ten pounds, sitting most of the time, and standing occasionally. *See* DOT

Appendix C. The vocational expert, upon review of the file (R. at 288), concurred with the DOT that Plaintiff's past positions required only sedentary exertion (R. at 290).

Given that conflicting evidence subject to more than one interpretation was presented, it fell to the ALJ to resolve that conflict. *See Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. This Court has no authority to reweigh evidence to resolve such conflicts, and thus it finds no reversible error in this regard.

Plaintiff also argues, briefly, that the ALJ's RFC assessment was more restrictive than one RFC hypothetical posed to the vocational expert. (Dkt. # 18 at 14-15.) Specifically, Plaintiff argues that the ALJ asked the vocational expert to assume that Plaintiff could lift ten pounds occasionally, but eventually found that he could lift "less than 10 pounds" occasionally. (*Id.* at 15.) Thus, Plaintiff asserts that the "incomplete hypothetical lacks probative value." (*Id.*)

Plaintiff's argument is disingenuous. At the point in the record that Plaintiff cites, the ALJ was describing a hypothetical for the vocational expert, misspoke about Plaintiff's lifting capabilities by saying "20 pounds," and then immediately corrected himself by saying "oh, I'm sorry. He can lift ten pounds." (R. at 296.) In so doing, the ALJ failed to append the "up to" qualifier. (*See id.*) The ALJ otherwise was consistent in questioning the vocational expert on a sedentary lifting capacity. (*See* R. at 288-90, 296-99) That capacity requires the ability to exert "*up to* 10 pounds of force occasionally,"*see* DOT Appendix C (emphasis added), which is entirely consistent with the ALJ's ultimate conclusion that Plaintiff could lift "less than 10 pounds occasionally" (R. at 27). There is no indication in the record that the vocational expert was confused about the lifting capacity at issue, as she repeatedly agreed that it was sedentary. (*See, e.g.*, R. at 298.) Thus, even if the ALJ committed error at this single point in the record, it was harmless error. *See Batson*, 359 F.3d at 1197.

**CONCLUSION**

The ALJ made no error of law that was not harmless and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment.

**IT IS FURTHER ORDERED** granting Defendant's Cross-Motion for Summary Judgment.

DATED this 5th day of September, 2008.

G. Murray Snow
United States District Judge